The opinion of the Court was drawn up by
Cutting, J.
On December 29, 1856, the Bath Mutual Marine Insurance Company caused the defendant, " for whom it concerns,” to be insured, payable, in case of loss, to him, in the sum of seven thousand dollars, on three-sixteenths of ship Franklin King, for- one year. The ship was subsequently lost in the winter of 1857, and the amount due on the policy was paid to the defendant in May of the same year. And the first question presented is, for whose benefit was the ship insured, or, in other words, who had the insurable interest in one sixty-fourth part thereof, the only part now in controversy. The answer depends upon much evidence, both oral and documentary.
*191 It appears that Benjamin Carr died on January 11, 1854, intestate, leaving a widow, Nancy B. Carr, live minor and two adult children, of the latter, was George F. Carr; also leaving much personal property, a part of which was five thirty-second parts of the ship Franklin .King; that the widow was appointed administratrix, and an inventory of the personal estate was subsequently returned to the probate office on March 4, 1854, at which time she duly signified her dissent to be held accountable therefor at the appraisal.
The next important ora in the administration embraces what transpired under the provisions of R. S. of 1840, then in force, c. 108, §§ 21, 22, which provide that— "Whenever, on the settlement of any account of any administrator, there shall appear to remain in his hands any goods and chattels, rights and credits, not necessary for the payment of debts and expenses of administration, the Judge shall order the same to be distributed according to the provisions of chapter ninety-three. When the surplus shall consist of any other property besides money, the Judge may order a specific distribution of the same, in proportion to the value thereof; and for this purpose, if found convenient, he may appoint one or more appraisers to value and make a specific distribution of the same, under oath; and make report thereof to the Judge for his acceptance.”
And we next find, that on November 3, 1856, the Judge made and issued the following order or decree; viz.: —
"Lincoln, ss. — To John D. Barnard, Richard Robinson and Edward O'Brien. Whereas upon the settlement of the fourth account of Raney B. Carr, administratrix of the estate of Benjamin Carr, (&c.,) there appears to be remaining in her hands not necessary for the payment of debts and expenses of administration, the following goods and chattels ; viz. : five thirty-seconds ship Franklin King,” (and portions of sundry other vessels not necessary here to mention,) "which I hereby order to be distributed in proportion to the value thereof; to wit: — one-third to ATancy B. Carr, one-seventh to George F. Carr, one-seventh to Helen M. Carr, *192 five-sevenths to Rowland Jacobs, jr., guardian,” &c. "You are therefore hereby appointed a committee to appraise and make a specific distribution of the same under oath and make report thereof as soon as may be.” Then follows the return of the committee in usual form, whibh was duly accepted at a Probate Court held on December 28, 1856, and ordered to be recorded; by which a specific .distribution was made to the widow and heirs as the order directed, and among other things one sixty-fourth part of the ship Franklin King to George F. Carr. These proceedings disclosed "a full administration, after which, the residue of the property passed to the heirs,” was ordered to be, and was distributed, and the probate records are sufficient muniments of title. Bean v. Bumpus, 22 Maine, 554.
But, it is contended by the defendant’s counsel that, under the general decree of the Probate Court, made on Dec. 23, 1856, on settlement of the administratrix’s fifth account, the balance of eleven thousand three hundred dollars and' twenty-three cents, being in her hands, was ordered to be specifically distributed to the widow and children of the deceased, to each their respective proportions according to. law. And that the administratrix has a legal right to set off any claim she may have against George F. Carr, who is said to be indebted to her in her official capacity. And, to sustain this proposition, the counsel relies upon the case of Proctor v. Newhall, 17 Mass., on page 93, where the Court observe that, " if the administrator would avail himself of the right of set-off, he may refuse to pay the distributive share ; but this right of set-off does not constitute a lien on the estate.” The Court must have referred to a distributive share to be paid in money, otherwise a right of set-off might constitute a lien on the estate or specific chattel,-which the opinion negatives.
The case at bar discloses two decrees of the Probate Judge, made on the same day, (Dec. 23, 1856,) viz., the general decree ordering distribution and payment of the balance in the administratrix’s possession, on settlement of *193 her fifth account, and a decree ordering the acceptance and record of the appraisers’ report for a specific distribution of certain vessels, which we have before considered. Now, it is again urged, that these two decrees are inconsistent, and that the one ordering a distribution of all the property, to be paid in money to the respective heirs, must prevail. If it be so, and George F. Carr’s proportion was due to him from the administratrix in money, then the remarks quoted from 17th Mass, might be appropriate. But the records of the Probate Court manifest no such inconsistency.
The administratrix had charged herself with the personal property, which she was under no obligation to take, and which she declined to take at the appraisal; she then was accountable for its legal appropriation, either in discharge of debts and expenses of administration, or its distribution among the heirs. After the decree perfecting the specific distribution of the vessels, as we have already observed, the property passed to the respective distributees, whose claim against the administratrix to the amount of their appraised value became satisfied, and should be a credit in her administration account. To contend that under the general decree she would be obliged to pay the several sums, ordered to be distributed, in money, would be equivalent to an assumption that, notwithstanding her written dissent to the contrary, duly filed in the probate office, she was to assume and account for all the personal property at its inventoried appraisal, which was then remaining on hand. All the parties, acting under that decree, construed it otherwise, for, on Dec. 24th, the day following, the administratrix settled with Jacobs, the guardian of the minor children, and paid him towards their share, the sum of 83495, by his receipting for three thirty-second parts of the ship Franklin King, which was the proportion and the appraisal under the specific decree. And the same proceedings were had with Helen M. Carr in relation to her share. Now, if the specific decree was annulled by the general one, what authority had the administrator to charge the heirs with any particular por *194 tions of the ship ? How did she know, otherwise than by the specific distribution, what parts of particular vessels belonged to the one or the other of the heirs, and why did she settle with them in exact conformity with the specific appraisal and distribution ? On the final settlement of her administration at the probate office, that record-may be deemed of more importance, and be more justly appreciated than it seems to be by the defendant’s counsel in the present case.
On Dec. 29, 1856, six days after the distribution, as has already appeared, the defendant obtained the policy, and he does not deny, that .it was procured for the owners of the shares according to the specific distribution, except as to the widow and George F. Carr, in relation to whom, he claims for the former, in addition to her share, that also distributed to the latter, being one sixty-fourth part of the ship, contending that the title to that portion never was transferred by a bill of sale from- the administratrix, who claimed possession and a lien upon it, by way of a set-off of certain notes said to be due from George to herself, in her .official capacity. But we have seen that the property passed without such formal transfer to George-, by force of the specific distribution, and consequently the administratrix, at the date of the policy, had no insurable interest in that shai*e. On the twenty-third day of December, then, the business relations between the administratrix and George were thus : — under the general decree, she stood indebted -to George on her administration account in the sum of one thousand seventy-six dollars and twenty-two cents, less the sum of five hundred eighty-two dollars and fifty cents,' the appraised value of his distributed share in the ship, leaving a balance in her hands to be accounted for in money, of four hundred and ninety-three dollars and seventy-two cents. And, according to the rule promulgated in Proctor v. Newhall, before cited, so far as it regards the balance, the administratrix may have, perhaps, the right to a set-off, as claimed by the defendant, but which right creates no lien on George’s *195 share in the ship, as to which she stands in the same relation to him as any other of his creditors.
This presents another inquiry. Was the one sixty-fourth insured for George? Otherwise, that portion of the policy was void as a wager policy, and the defendant has received the sum so insured in fraud of the insurance company. Hence arises a question of fact about which the evidence is somewhat conflicting, but, without enlarging upon this point, it may suffice to remark that, in our opinion, the testimony preponderates in favor of the conclusion that the insurance was obtained for George.
The next and only remaining question presented is, whether this action for money had and received can be maintained by the present plaintiff. It is proved that the ship was lost in the winter of 1857, and the amount insured paid to the defendant, in May following, and that George transferred his interest in the policy to the plaintiff on March 6th of the same year; so that the assignment was after the loss and before the payment.
The action .is on assumpsit, to maintain which, on any count, there must be a promise, either express or implied. No express promise has been proved. Can a promise be implied?
It is said in Mason v. Waite, 17 Mass., 563, that, "as to any want of privity, or any implied promise, the law seems to be, that where one has received the money of another, and has not a right conscientiously to retain it, the law implies a promise that he will pay it over.” And, in Hall v. Marston, ib., 579, — "whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, although, he has never seen or heard of the party who has the right.” Also, in Rockefeller v. Robinson, 17 Wend., 217, — "where the defendant has received money, which in equity and good conscience ought to be paid to the plaintiff, although nothing has passed between the parties.” And, in Eagle Bank. v. Smith, 5 Conn., 75, " a promise, may be implied where there is no privity of con *196 tract, as between the finder of money lost and the owner, who loses it.” But, on an examination of those cases, which are among the strongest that can be cited for the plaintiff, it will be found that they in no- way conflict with the well established rule that dioses in action, except negotiable securities, are not assignable at law, so that the assignee can maintain an action in his own name. No such principle was there invoked. The Courts were considering cases where the plaintiffs claimed directly, and not through the medium of an assignment. And this brings us to the consideration of the nature of the plaintiff’s demand in the present suit. The policy, when assigned, was not a chose in action against the defendant, but against the insurance company, and, if it had been enforced by a suit at law, it must have been by the defendant as the trustee of the several parties interested at the timé of the institution of the, suit. If A transfer to B a note not negotiable, which is committed to an attorney for collection, and a suit is to be brought, it must be in the name of A, but, when collected, the chose in action is by B, against the attorney; or, if collected without a suit, the relations would be the same. In all such cases the question arises, for whose benefit was the collection made ? And the person receiving the money, whether as trustee or attorney, must be considered as receiving it to the use of the assignee, who became such, prior to its reception, and such relation creates a privity of contract and implies a promise. In such case, however, the trustee is justly entitled to avail himself of any equities, which may originate in his paying over to the wrong party, through the laches of the assignee, in not giving seasonable notice. And, if the defendant had paid to George the amount collected, before such notice, instead of paying it to a party who had no interest in the policy, he might have been justified.
It appears that the defendant held in his hands, after deducting the premium note and charges against the ship, as the plaintiff’s proportion, the sum of five hundred and four dollars and ninety-eight cents, and, on default, judgment *197 must be rendered for that sum, with interest since the date of the writ. Defendant defaulted.
Tenney, C. J., Rice, Gíoodenow and May, JJ., concurred.